UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED STATES OF</small> A<small>MERICA</small>,

    Plaintiff,

    v.

A<small>RTHUR</small> B<small>OWLSON</small>,

    Defendant.
_____/

Case No. 01-cr-80834-1

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

**O<small>RDER</small> D<small>ENYING</small> D<small>EFENDANT'S</small> P<small>ETITION</small> F<small>OR</small> C<small>OMPASSIONATE</small> R<small>ELEASE</small> [362] W<small>ITHOUT</small> P<small>REJUDICE</small>**

On May 29, 2020, Arthur Bowlson filed a Motion for Appointment of Counsel [359] to support his compassionate release from the United States Penitentiary (USP) Big Sandy, where he is in the custody of the Bureau of Prisons (BOP). On June 16, 2020, the Court appointed the Federal Community Defender to brief his claims. (ECF No. 360). On June 26, 2020, Bowlson, through counsel, filed a Petition for Compassionate Release [362]. (ECF No. 362). The Government filed a Response [363] on the same day. (ECF No. 363). On June 29, 2020, Bowlson filed a Reply [366]. (ECF No. 366). On June 30, 2020, the Court held a hearing and issued an order holding Defendant's Petition [362] in abeyance pending an independent psychiatric evaluation of Mr. Bowlson. (ECF No. 369). Following the submission of the psychiatric report, the Court held a final status conference on the Petition for

Compassionate Release on January 4, 2020. For the reasons stated below, the Court **DENIES** Defendant's Petition for Compassionate Release [362] **without prejudice**.

## FACTUAL BACKGROUND

### A. Procedural History

On February 11, 2003, a jury convicted Arthur Bowlson of four counts of Bank Robbery, in violation of 18 U.S.C. § 2113(a), one count of Aiding and Abetting Bank Robbery, in violation of 18 U.S.C. § 2113(a) and 2, and two counts of Aiding and Abetting Using, Carrying, and Brandishing a Firearm during a Crime of Violence, in violation of 18 U.S.C. § 942(c)(1)(A)(ii) and 2. (PSR ¶ 11). On February 24, 2004, the Court sentenced Mr. Bowlson to be imprisoned for a concurrent 121 months term for the bank robberies and a consecutive seven years and twenty-five years term for each firearm count — forty-two years in all. (ECF No. 242).

On September 9, 2005, the United States Court of Appeals for the Sixth Circuit affirmed Mr. Bowlson's convictions, vacated his sentence, and remanded the case for resentencing in light of *United States v. Booker*, 125 U.S. 738 (2005). *United States v. Bowlson*, 148 F. App'x 449 (6th Cir. 2005). On June 18, 2007, the Court re-sentenced Mr. Bowlson to a concurrent one-month term of imprisonment for the bank robberies and re-imposed the consecutive statutory minimums of seven and twenty-five years for the firearms convictions. (ECF No. 303). His projected release date is May 19, 2030. *Find an Inmate*, FED. BUREAU PRISONS,

https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results

[https://perma.cc/7P62-FMVE] (BOP Register No. 29923-039) (last visited June 28, 2021).

### B. Background and Medical condition

Mr. Bowlson is 45 years old and was born and raised in Detroit. He describes his upbringing as being "marred by abuse and ignorance." (*Id.* at ¶ 91). At the age of seven, his mother was killed by his stepfather and he was sent to live with his mother's cousin. (*Id.* at ¶ 89). In this home he was repeatedly molested by two female cousins, who were in turn being molested by their grandfather. (*Id.* at ¶ 90). In 1990, his aunt placed him in military school in Indiana, but he was subsequently removed. (*Id.* at ¶ 92). Upon his return to Michigan, he committed sexual assault and armed robbery at age 14 and was placed in the sex offender unit at a boy's training school until the age of 19. (*Id.* at ¶ 72-73, 92). While there he received his GED and counseling for his mental illness. (*Id.* at ¶ 98, 102). In 2000, he moved in with his now ex-wife until he became incarcerated. (*Id.* at ¶ 93, 96). Mr. Bowlson also has a daughter who resides with her mother in Detroit. (*Id.* at ¶ 95). He additionally struggled by alcohol and marijuana abuse and has not been able to maintain a job for more than a couple of months. (*Id.* at ¶ 100, 103).

Due to his traumatic upbringing, Mr. Bowlson has a long history of severe mental illness. Prior to his sentencing he was diagnosed with Schizoaffective

Disorder and Post-Traumatic Stress Disorder, however, his treating physicians in the BOP disagree with this diagnosis and claim that his symptoms instead conform with Antisocial Personality Disorder. His current physician, Dr. Stephenson, states that Mr. Bowlson fails to conform to social norms, disrespects lawful behavior, regularly exhibits verbal and at times physical aggression to others, and has difficulty regulating his emotions. (ECF No. 364, PageID.3636, 3638). Largely due to his mental illness, Mr. Bowlson has a significant disciplinary record in prison. The most egregious incidents include assaulting, fighting, and threatening physical and sexual abuse. (*Id.* at 3641-42). However, he has also shown progress in addressing his past alcohol and marijuana abuse by completing a drug education class and expressing interest in the BOP's Residential Drug Abuse Program. (*Id.*).

In order to assess whether Mr. Bowlson has received adequate treatment in the BOP, the Court ordered Dr. John W. Thompson, Jr., M.D., to conduct an evaluation of Mr. Bowlson's psychiatric condition. (ECF No. 369); (ECF No. 376). After interviewing Mr. Bowlson and reviewing his treatment history, Dr. Thompson finds that Mr. Bowlson displays self-injurious behavior, verbally aggressive behavior, and difficulty regulating his behavior within the confines of the correctional facility. As a result, Dr. Thompson concludes that Mr. Bowlson is suffering from the following Cluster B personality disorders: (1) Antisocial Personality Disorder; (2) Borderline Personality Disorder; and (3) Narcissistic

Personality Disorder. Despite this, Dr. Thompson notes that Mr. Bowlson's functioning improved while he participated in the Challenge Program from 2016 to 2018 and that he would benefit from additional therapies available at the facility, such as Dialectic Behavioral Therapy. Consequentially, Dr. Thompson concludes that Mr. Bowlson is receiving appropriate treatment within the federal correctional system.

## ANALYSIS

When reviewing a motion for compassionate release, a court first finds whether "whether 'extraordinary and compelling reasons warrant' a sentence reduction" and then determines whether the 18 U.S.C. § 3553(a) factors warrant a reduction. *United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). However, because the Court finds that the 18 U.S.C. § 3553(a) factors do not warrant Mr. Bowlson's sentence reduction, it declines to evaluate his extraordinary and compelling reasons for release.

"[T]he deferential abuse-of-discretion standard requires district courts to supply specific factual reasons for their compassionate release decisions." *Jones*, 980 F.3d at 1101-02. However, "'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id.* at 1114 (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)). The §

3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> >  **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >  **(B)** to afford adequate deterrence to criminal conduct;
> >  **(C)** to protect the public from further crimes of the defendant; and
> >  **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> >  **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> >  [. . .]
>
> **(5)** any pertinent policy statement—
> [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.

Although Mr. Bowlson has made progress during his incarceration, the record, including Dr. Thompson's report, reflects that the he has not fully participated in the BOP's medical care and correctional treatment in an effective manner. Given his psychiatric condition, serious disciplinary record, and history of failing to cooperate with his treating physicians, the Court does not have confidence at this time that Mr. Bowlson's release would ensure both his and the public's safety.

While the Court implores Mr. Bowlson to take advantage of every appropriate treatment opportunity he is given, it also admonishes the BOP for its use of dehumanizing disciplinary tactics — namely special housing units or solitary confinement. (ECF No. 364, PageID.3636, 3650). Mr. Bowlson has repeatedly been placed in solitary confinement and his treatment notes show that he reports more mental health problems during these times. (*Id.* at 3636, 3638, 3646, 3650). Such measures are not only ineffective in correcting behavior in individuals with severe mental illness, they have been found to worsen already debilitating conditions, as evidenced by the United Nations' classification of solitary confinement as torture[1]. Rehabilitation is a two-way street; it requires the full cooperation and positive investment of both the patient and provider. The Court implores the BOP and Mr. Bowlson to work in concert so that Mr. Bowlson will one day be safely returned to his community. The Court welcomes Mr. Bowlson's renewed petition for

---

[1] Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, United States: Prolonged Solitary Confinement Amounts to Psychological Torture, says UN Expert (Feb. 28, 2020), https://www.ohchr.org/EN/NewsEvents/Pages/DisplayNews.aspx?NewsID=25633 [https://perma.cc/KF77-ZT8X] (stating that solitary confinement in U.S. prisons "trigger and exacerbate psychological suffering, in particular in inmates who may have experienced previous trauma or have mental health conditions or psychosocial disabilities . . . The severe and often irreparable psychological and physical consequences of solitary confinement and social exclusion are well documented and can range from progressively severe forms of anxiety, stress, and depression to cognitive impairment and suicidal tendencies . . . This deliberate infliction of severe mental pain or suffering may well amount to psychological torture."); *see also* Fatos Kaba, Andrea Lewis, Sarah Glowa-Kollisch, et. al., *Solitary Confinement and Risk of Self-Harm Among Jail Inmates*, 104 AM. J. PUB. HEALTH 442, 443 (2014) (finding that 53.3% of acts of self-harm and 45.0% of acts of potentially fatal self-harm in New York City jails occurred within the group of individuals in solitary confinement).

compassionate release when that day comes.

## CONCLUSION

**IT IS ORDERED** that Arthur Bowlson's Petition for Compassionate Release [362] is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**.

Dated: June 28, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge